**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 18-00769-JW |
| | Chapter 13 |
| Alan Miles Alvarez, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Motion to Substitute Collateral or Use Insurance Proceeds ("Motion") filed by Alan Miles Alvarez ("Debtor"). The Chapter 13 Trustee consented to the relief requested in the Motion. CarMax Business Services LLC ("CarMax") filed a Reply to the Motion. Having reviewed the pleadings and considered counsel's arguments and evidence presented at the hearing on the Motion, the Court makes the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

On August 4, 2016, Debtor entered into a Retail Installment Contract with CarMax Auto Superstore, Inc. for the purchase of a 2014 Dodge Grand Caravan ("Vehicle"). The amount financed was $23,802. Debtor simultaneously executed an optional GAP[2] waiver agreement ("GAP Agreement"), which provided the following coverage for Debtor in the event of a total loss or unrecovered theft of the Vehicle:

> **2. Coverage.** Your contract requires you to pay us the outstanding unpaid balance of your contract even if the covered vehicle is a total loss or subject to an unrecovered theft. By entering into this agreement, you and we agree that we will waive our rights to recover part of your outstanding unpaid balance (total loss benefit) if the covered vehicle is considered a total loss or is subject to an unrecovered theft. The administrator will compute the part that will be waived (total loss benefit) by subtracting the [Actual Cash Value] of the covered vehicle from the unpaid net balance. Any physical

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.
[2] GAP is an acronym for Guaranteed Asset Protection.

> damage deductible amount in excess of $1,000 remains your responsibility. Your maximum total loss benefit under this agreement is $50,000.

The GAP Agreement provides that CarMax is the assignee of the agreement. Debtor financed the purchase of the GAP Agreement in the amount of $795. The GAP Agreement further provides the following acknowledgement signed by Debtor:

> By signing below,… You acknowledge that your purchase of this agreement is voluntary and is not required for you to obtain credit. You may be able to obtain GAP coverage from your primary insurance carrier. You also acknowledge that you read and understood this agreement, … and received a completed copy of the agreement before signing it.

On February 16, 2018, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Debtor listed his interest in the Vehicle under lien to CarMax in his schedules and provided for payment to CarMax in his plan. Debtor's plan was confirmed on August 13, 2018. Pursuant to the terms of the confirmed plan, CarMax has an allowed secured claim of $21,226.88, secured by the Vehicle. Debtor has made payments to CarMax pursuant to the plan and the records of the Chapter 13 Trustee indicate that the balance on CarMax's claim as of the date of the filing of the Motion is $17,843.33.

On April 8, 2019, the Vehicle was damaged in a collision and was declared a total loss by Debtor's insurance carrier, Safeco Insurance ("Safeco"). Safeco has offered to settle the claim on the Vehicle for $9,801 and tendered a check in that amount made payable to CarMax.

Debtor seeks authority to use the insurance proceeds to replace the Vehicle with a vehicle of equal or greater value under the condition that the new vehicle purchased by Debtor will be substituted as collateral for the allowed secured claim of CarMax and the lien of CarMax will be properly noted on the title of the newly purchased vehicle. The parties agree that Debtor may use the insurance proceeds from Safeco to buy a replacement

vehicle. Debtor further seeks authority to use "GAP insurance proceeds" paid to CarMax under the GAP Agreement (to cover the remaining balance of CarMax's claim) in order to purchase a higher cost van, which he asserts is needed to transport his family. Debtor asserts that receipt of both the insurance proceeds and the GAP insurance proceeds is necessary to enable him to purchase a replacement vehicle. If Debtor is permitted to use both proceeds to purchase a new vehicle, Debtor agrees that CarMax would retain its secured claim paid through the confirmed plan in the amount of $17,843.33.

CarMax asserts that Debtor is not entitled to receive funds under the GAP Agreement because Debtor is only entitled to a waiver of any deficiency under the terms of the GAP Agreement. CarMax further asserts that no funds are being paid to it under the GAP Agreement which could be paid to Debtor, as it is making no claim under the GAP Agreement, and that the GAP Agreement will transfer to Debtor's new vehicle. CarMax further asserts that it would retain the full amount of its claim under the confirmed plan. At the hearing, Counsel for CarMax advised the Court that CarMax had received payment under its separate GAP agreement of approximately $6,200, but returned those proceeds because it believed its obligation to waive the deficiency under the GAP Agreement had not been triggered by the proposed substitution of collateral, and that the GAP Agreement coverage would simply transfer to the new vehicle.

## CONCLUSIONS OF LAW

The issue before the Court is whether Debtor is entitled to receive funds under the GAP Agreement to use towards the purchase of a replacement vehicle. The GAP Agreement is a contract subject to general rules of contract interpretation. As the GAP Agreement appears to have been executed by the parties in North Carolina and contains no

3

choice of law provision, North Carolina's rules of contract interpretation govern this Court's analysis. *See NCR Corporation v. Jones,* 157 F.Supp.3d 460 (W.D.N.C. 2016). In interpreting a contract, the Court must read "the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract....Intent is derived not from a particular contractual term but from the contract as a whole." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 618 S.E.2d 219, 225 (2005) (internal citations and quotation marks omitted).

The Court has reviewed the terms of the GAP Agreement and concludes that the plain language of the contract clearly provides that Debtor paid for a waiver of the outstanding unpaid balance in the event the covered vehicle is considered a total loss, not the right to receive GAP proceeds.[3] To the extent Debtor's Motion seeks authority to use "GAP insurance proceeds" paid to CarMax to purchase a replacement vehicle, the Motion is denied because the GAP Agreement between Debtor and CarMax provides no such proceeds.

The Court further finds that under the terms of the GAP Agreement, a total loss has occurred as a result of the collision on April 9, 2019, as evidenced by CarMax's receipt of insurance proceeds from Safeco, and thus the coverage provision is triggered. According to that provision, CarMax is compelled to waive its right to recover the portion of its claim that represents the outstanding unpaid balance less the Actual Cash Value of the Vehicle, which the Court determines to be the insurance proceeds received from Safeco. The parties

---

[3] In fact, Debtor had the option not to agree to the GAP waiver and instead get his own GAP insurance payable to him, but he elected not to do so. The GAP Agreement expressly provides that Debtor "may be able to obtain GAP *coverage* from your primary insurance carrier." (emphasis added) Debtor testified that he had obtained such coverage on a previous vehicle he had owned several years ago.

4

bargained for the waiver of the outstanding unpaid balance in the event of a total loss, not a transfer of the GAP Agreement to a replacement vehicle of a lesser value. While CarMax may choose to accept or refuse any GAP proceeds it receives from the policy it purchased, the secured claim and its right to deficiency must be reduced to $9,801. Even if it refuses those proceeds, CarMax must file an amended claim to reduce its claim to the amount paid by the liability insurance policy of Debtor, i.e., $9,801. Furthermore, there was no dispute that the Safeco insurance proceeds are cash collateral and can be used by Debtor for the purchase of a new vehicle. Therefore, CarMax shall transfer the insurance proceeds it received from Safeco to Debtor for use by Debtor in purchasing a replacement vehicle. In such event, Debtor will grant a first position lien on the replacement vehicle in the amount of $9,801 (the Actual Cash Value represented by the insurance proceeds) to CarMax.[4] Therefore, it is

ORDERED that Debtor's motion is granted to allow Debtor to use the insurance proceeds from Safeco to purchase a vehicle of equal or greater value to the resulting amount of CarMax's secured claim in this case, $9,801, under the condition that the new vehicle purchased by Debtor will be substituted as collateral for the resulting allowed secured claim (after amendment) of CarMax and the lien of CarMax will be properly placed as a first position lien on the title of the newly purchased vehicle;[5]

IT IS FURTHER ORDERED that CarMax shall amend its proof of claim to reduce its secured claim to $9,801;

---

[4] Alternatively, the Debtor could allow CarMax to retain the insurance proceeds in full satisfaction of its secured claim and separately finance the purchase of a new vehicle upon the filing of the proper motion before the Court.

[5] To the extent that CarMax seeks any other conditions regarding the purchase of the vehicle, the Court denies such relief.

IT IS FURTHER ORDERED that CarMax shall forward the insurance proceeds received from Safeco to Debtor's attorney, Thomas M. Fryer, for proper disbursement;

IT IS FURTHER ORDERED that Debtor and Debtor's attorney shall ensure that the seller of the new vehicle shall forward the title of said vehicle to CarMax so that CarMax may record its lien;

IT IS FURTHER ORDERED that CarMax shall forward the title to the totaled Vehicle to Safeco, so that Safeco may dispose of such vehicle;

IT IS FURTHER ORDERED that Debtor's attorney shall timely monitor all transactions and hold the insurance proceeds in trust to be disbursed for the replacement vehicle and that Debtor's attorney shall ensure that the seller has notice of and complies with this Order; and

IT IS FURTHER ORDERED that if the Trustee or Debtor's attorney determines that an amended plan is necessary as a result of this Order, Debtor shall file such amended plan within 14 days after the entry of this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/16/2019**



*JohnEWaites*

US Bankruptcy Judge
District of South Carolina

Entered: 07/16/2019